UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARY KELLY,                    )
            Plaintiff,         )
                               )
            v.                 )          Civ. No. 06-12291-MLW
                               )
CORT FURNITURE,                )
            Defendant.         )

MEMORANDUM AND ORDER

WOLF, D.J.                                          May 7, 2010

I. SUMMARY

Plaintiff Mary Kelly alleges a state law handicap discrimination claim against defendant CORT Furniture ("CORT"). The claim, brought under Mass. Gen. Laws ch. 151B, arises out of CORT's termination of Kelly, which followed Kelly's unannounced absence from work on a day in which she went to the hospital to obtain treatment for her claimed handicap, a back condition. Kelly also asserts claims of intentional and negligent infliction of emotional distress. After discovery, Magistrate Judge Robert B. Collings issued a thoughtful Report and Recommendation (the "Report") recommending that this court allow the defendant's motion for summary judgment.

Kelly filed objections to the Report as to Count I, her state law handicap discrimination claim, but made no objection to the Magistrate Judge's recommendations concerning Counts II and III, which respectively allege intentional and negligent infliction of

1

emotional distress.   The court has considered de novo the matters as to which objections were made.   See 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72.   Contrary to the Magistrate Judge, the court finds that summary judgement should not be granted on the handicap discrimination claim.   The motion for summary judgement is meritorious on the other two claims.

More specifically, the court finds that genuine issues of material fact exist as to whether Kelly was terminated because of a handicap, in violation of ch. 151B.   However, the court agrees that the plaintiff's claims for intentional and negligent infliction of emotional distress are preempted by the Massachusetts Workers' Compensation Act, Mass. Gen. Laws ch. 152, §1 et seq.

Accordingly, the defendant's motion for summary judgment is being denied in part and allowed in part.

## II. LEGAL STANDARDS

### A. Summary Judgment

The court's discretion to grant summary judgment is governed by Federal Rule of Civil Procedure 56.   Rule 56 provides, in pertinent part, that the court may grant summary judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c)(2).   A court must examine the record "taken as a whole," Matsushita Elec. Indus. Co. v.

2

Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must view the facts in the light most favorable to the nonmoving party, Fennell v. First Step Designs, Ltd., 83 F.3d 526, 534 (1st Cir. 1996). However, "[w]hen a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial, there can no longer be a genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." Smith v. Stratus Computers, Inc., 40 F.3d 11, 12 (1st Cir. 1994).

In determining the merits of a motion for summary judgment, the court is compelled to undertake two inquiries: (1) whether the factual disputes are genuine, and (2) whether any fact genuinely in dispute is material. Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." Id. at 248. To determine if the dispute about a material fact is "genuine," the court must decide whether "the evidence is such that a reasonable [fact finder] could return a verdict for the nonmoving party." Id. See also Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990); Oliver v. Digital Equipment Corp., 846 F.2d 103, 105 (1st Cir. 1988). Under this analysis, the evidence relied upon

3

must be admissible.  See Vazquez v. Lopez-Rosario, 134 F.3d 28, 36
(1st Cir. 1998).

    B. Objections to Magistrate's Report

    To the extent a plaintiff objects to the Report, the court
must "make a de novo determination of those portions of the report
or specified proposed findings or recommendations to which
objection is made." 28 U.S.C. §636(b)(1); see also Fed. R. Civ. P.
72.  As to all other matters, the court "may accept, reject, or
modify, in whole or in part, the findings or recommendations made
by the magistrate judge." 28 U.S.C. §636(b)(1); see also Fed. R.
Civ. P. 72.

III. FACTS

    Unless otherwise indicated, the following facts are not
disputed.  The disputed facts are stated in the manner most
favorable to Kelly.

    Kelly began working for CORT in March, 2002 as a bookkeeper in
the company's Norwood distribution center.  At the time she was
hired, she did not identify herself as a handicapped person for
purposes of CORT's affirmative action program.  However, in 2003
Kelly reported that she was having problems with her back, and she
received some limited accommodations.  Specifically, she was
provided with help moving boxes during the annual clean up, and she
was given several Fridays off to undergo certain procedures for her
back.

Kelly received raises in November, 2003 and November, 2004, and a promotion in November, 2004. Her performance evaluations were largely positive as to the quality of her work, but did reflect concerns about excessive lateness. CORT's handbook states that excessive unscheduled absences and lateness "disrupt work flow and customer service" and "will result in disciplinary action, up to and including termination." Employee Handbook at 12-13, Def.'s Memo, Exh. B. Kelly admitted in her deposition that having regular attendance, being punctual, and keeping managers apprised of her work schedule were "essential" to her job. Kelly Dep. at 155-56.

On May 27, 2004, Kelly was issued a formal warning describing several instances in which she had missed time from work. The warning stated that her absenteeism "put a tremendous burden on the rest of the district when it comes to covering her responsibilities and more importantly the districts (sic) customer service." May 27, 2004 Warning, Def.'s Memo, Exh. B. Kelly does not dispute that she received a warning, but contends that on several occasions when she was not at her desk at her scheduled start time, she was in fact on the job speaking to warehouse managers about work-related matters. Kelly also asserts that she frequently worked through her lunch break and that CORT often asked her to work in their Burlington sales facility, thus preventing her from being at her desk in Norwood continuously. As evidence that she was performing her job well, Kelly references her positive performance

evaluations, a letter from a CORT client that praises her work, and CORT's decision to retain her at a time when it laid off her entire department.

A November, 2004 performance evaluation indicated that Kelly's attendance had improved.  However, after a particularly long lunch break, Kelly received a second warning on May 3, 2005.  This time, Kelly was warned that she had to adhere to her assigned schedule of working from 9:00 a.m. to 6:00 p.m. with one hour for lunch, and that she was required to seek approval in advance for any deviations from this schedule.

Beginning in 2003, Kelly's back degenerated.  Kelly agreed at her deposition that her back condition did not prevent her from working, walking, climbing stairs, standing, typing, filing papers, or talking on the telephone, and that her doctor never placed her on any written restrictions relating to her work.  However, she has submitted records of doctors' visits and of MRIs performed in 2003 and 2005.  In addition, she addressed the effects of her condition in her affidavit, stating:

> My back condition . . . substantially limited major life activities addressed at home.  I could not cook.  I also could not clean my apartment on a consistent basis.  I could stand only for a limited time.  I could perform only brief manual tasks.  I also did not engage in physical activities. I and my husband spent free time watching television.

> *   *   *

> I also could not sit for extended periods at work.  I needed to stand for considerable periods.

6

Kelly Aff. at ¶¶ 17, 19.   A February, 2005 MRI report includes, among other things, a finding of "diffuse degenerative changes involving the intervertebral discs" in Kelly's back.   Kelly Aff., Exh. C.

On May 31, 2005, after leaving for her lunch break, Kelly decided that she needed to go to the emergency room, and she did not return to work until three hours and fifteen minutes after she had left. The record of that visit to the emergency room states:

> 33 year old woman with chronic back pain recently made worse by a recent move in which she was carrying boxes.   She states low back pain with radiation down the leg.   Occasional numbness of left leg though not now similar to her acute episodes in the past.   Patient seen here 6 days ago and given script for percocet which is now gone.   She was referred to Spine Center and is waiting to hear back from them about an appointment. . . . She has had MRI of back done on 2/05 which does show several bulging discs with nerve room impingement at one level in the lumbar spine.

Kelly Aff., Exh. D.   This report also notes a history of "spiral degenerative disease."   Id.

Kelly states that, when she left work on May 31, 2005, she expected to return within the hour, and she was unable to call once she was delayed because the use of cell phones was not allowed in the hospital.   She maintains that CORT suffered no prejudice as a result of her absence because she retrieved messages when she got back, and returned any calls she had missed while she was out.

That day, Kelly spoke to a supervisor about her absence.   She reported that she had initially left work at lunch time to give her husband the car, before realizing that she needed to go to the

emergency room.   Kelly Dep. at 205-221.   Some of her statements about her husband's need for the car and the reasons for it are contradicted by his own deposition testimony.   See Francis Kelly Dep. at 57-63.   Even without the benefit of this later testimony, the supervisor that Kelly spoke to on May 31, 2005 states that she found Kelly's explanation unbelievable, and told Kelly so.   Naomi Schmuckler Aff. at ¶4.   The parties agree that Kelly provided CORT with documentation demonstrating that she had received treatment for back pain, but her supervisor states that Kelly first told her that she had gone to the hospital because of a migraine.

Kelly was terminated on June 1, 2005.   CORT managers assert that her back condition was not discussed in making the decision to terminate her.   Rather, they claim to have reached the decision to terminate her because she "was missing in action without authorization for such an extended period of time on May 31 and based on her unbelievable account of the absence and her history of unacceptable attendance and tardiness."   Naomi Schmuckler Aff. at ¶5; Richard Freeman Aff. at ¶4.

On June 2, 2005, Kelly saw a doctor at the Spine Center of Newton-Wellesley Hospital, who reported:

> She has had pain in her lower back for 15 years. The pain is progressing. It is located in the lumbosacral junction area. It is described as a constant ache. Pain is about 5/10 on the visual analog scale at a constant level with exacerbation reaching 9/10 on the visual analog scale. She also started to notice this year pain in the left buttock and posterior left thigh and numbness in bilateral lower extremities. She also noted that the right lower extremity is weaker than the left.

8

> Pain is exacerbated by sitting and standing for long duration
> and it is mitigated by changing position on [sic] walking.
> Pain is interfering with all her daily activities.

Kelly Aff., Exh. E.   The report also discusses Kelly's prior
treatment:

> She underwent what appears to be a facet joint injection in
> Quincy and after that underwent radiofrequency in the Baptist
> Hospital, that was in the period between December 2003 and
> February 2004.   She reported no improvement with these
> procedures.   She did not have reports with her during the
> visit.   She also underwent physical therapy without
> improvement.

Id.

The present action was filed in Norfolk Superior Court.   CORT
timely removed the action to this court.   After the completion of
discovery, the present Motion for Summary Judgment was filed.


IV. ANALYSIS

A. Count I: Handicap Discrimination Claim

To prove her claim under Mass. Gen. Laws ch. 151B, Kelly bears
the burden to prove that she is handicapped, that she is a
"qualified handicapped person," and that she was terminated in
whole or in part because of her handicap.   Dartt v. Browning-Ferris
Indus., Inc., 427 Mass. 1, 7-11 (1998) (clarifying that a plaintiff
in a ch. 151B action need not demonstrate that an adverse
employment action occurred "solely" because of a handicap).

1. Preliminary Matters

a. Exhaustion

The   Magistrate   Judge   found   that   Kelly   satisfied   the

9

requirement of exhausting her administrative remedies by first filing a claim with the Massachusetts Commission Against Discrimination. Report at 15 n.14. In the absence of any objection by the defendant, the court accepts this finding.

b. Sufficiency of objection

CORT argues that Kelly's objection to the Report is inadequate to trigger de novo review by the court because it does not reference specific portions of the Magistrate Judge's Report. Federal Rule of Civil Procedure 72 requires parties to file "specific written objections to the proposed findings and recommendations" within 14 days. While Kelly's objection is indeed lacking in direct references to the Report, Kelly's argument is that genuine issues of fact exist that are material to the questions of whether she has a handicap, whether she is a qualified handicapped person, and whether she was terminated because of her handicap. Kelly's objection to the Report focuses on previously presented factual claims which she asserts refute the Magistrate Judge's conclusion that she has not provided evidence sufficient to permit a trier of fact to find in her favor on her handicap discrimination claim. While her objection does repeat much of her initial filing, it sufficiently "direct[s] the reviewing court to the issues in controversy." See Velez-Padro v. Thermo King de Puerto Rico, Inc., 465 F.3d 31, 32 (1st Cir. 2006). Therefore, de novo review is required.

### c. Prima facie case

CORT argues that it is entitled to summary judgment because Kelly has not submitted evidence to establish that her former position remained open and that CORT sought to fill it. This aspect of CORT's argument is derived from the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), which has been adopted for analysis of ch. 151B claims. See Wheelock Coll. v. Mass. Comm'n Against Discrimination, 371 Mass. 130, 137-39 (1976). Under this framework, a plaintiff establishes a prima facie case of discrimination by providing evidence that the plaintiff was "(1) handicapped; (2) capable of performing the essential functions of the job with reasonable accommodation; and (3) subject to an adverse action by his employer; and (4) the position he had occupied remained open and the employer sought to fill it." City of New Bedford v. Mass. Comm'n Against Discrimination, 440 Mass. 450, 461-62 (2003)(internal quotations omitted).

However, the four factors derived from McDonnell Douglas are not the exclusive way to establish a prima facie case of unlawful discrimination. See Massachusetts Commission Against Discrimination, Guidelines: Employment Discrimination of (sic) the Basis of a Handicap at IX.A.2, available at http://www.mass.gov/mcad/disability1a.html (the "MCAD Guidelines") (noting that "[t]he prima facie case may vary, depending on the

11

circumstances involved," and describing the four McDonnell Douglas factors as "[o]ne example of a prima facie case").[1]   CORT's decision to terminate Kelly while knowing that she had visited the hospital to obtain treatment, along with other evidence provided by the plaintiff, if believed, are sufficient to raise the required inference of discrimination under ch. 151B.

> 2.   Genuine Issues of Material Fact Exist as to Whether
> Kelly is "Handicapped" Under Chapter 151B

Kelly has a "handicap" if she has "a physical or mental impairment which substantially limits one or more major life activities." Mass. Gen. Laws ch. 151B, §1(17).   "'[M]ajor life activities' means functions, including, but not limited to, caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." Id. at §1(20).   The MCAD Guidelines add, "Other examples of major life activities include sitting, standing, lifting and mental and emotional processes such as thinking, concentrating and interacting with others." MCAD Guidelines at II.A.5.

The Guidelines define an impairment as a "physiological disorder affecting one or more of a number of body systems, or a mental or psychological disorder." Id. at II.A.2. The Guidelines also describe the term, "substantially limiting":

---

[1] The MCAD Guidelines are accorded "substantial deference." Modern Continental/Obayashi v. Mass. Comm'n Against Discrimination, 445 Mass. 96, 106 (2005).

> An impairment is substantially limiting if it prohibits or significantly restricts an individual's ability to perform a major life activity as compared to the ability of the average person in the general population to perform the same activity. The determination of whether an impairment substantially limits a major life activity depends on the nature and severity of the impairment, the duration or expected duration of the impairment, and the permanent or long-term impact of the impairment. An impairment substantially limits an individual's ability to work if it prevents or significantly restricts the individual from performing a class of jobs or a broad range of jobs in various classes.

Id. at II.A.6.

The Magistrate Judge found that the evidence is insufficient to prove that Kelly is handicapped under ch. 151B. The crux of the dispute is not whether Kelly has a "physical impairment" that is cognizable under the statute, but whether she has made a sufficient showing that her back problems "substantially limit" a "major life activity." The Magistrate found that a trier of fact could not conclude Kelly was substantially impaired in the activity of working. Kelly replies that her handicap substantially limited her ability to work and that this was evidenced by her need to leave work to go to the emergency room on May 31, 2005, her need to take certain Fridays off to receive treatment, and her inability to lift a certain amount of weight or sit for a long time. She also asserts that her back problems substantially limited other life activities, including sitting and activities at home.

The Magistrate Judge relied on evidence tending to refute Kelly's claim that she is "handicapped," including her failure to initially identify herself as handicapped when hired, her apparent

13

ability to perform her job with very little accommodation, and her testimony during her deposition that she was not placed on any written work restrictions or prevented from working, walking, climbing stairs, standing, typing, filing papers, or talking on the telephone.   While this evidence does favor the defendant, it is incomplete.

As explained earlier, on a motion for summary judgment, the court must review the record "taken as a whole," Matsushita, 475 U.S. at 587, and in the light most favorable to Kelly, the nonmoving party, see Fennell, 83 F.3d at 534.   Kelly's affidavit sets forth a few specific ways in which her back condition significantly impacts her day-to-day activities.   The court recognizes that "a party opposing summary judgment may not manufacture a dispute of fact by contradicting his earlier sworn testimony." Abreu-Guzman v. Ford, 241 F.3d 69, 74 (1st Cir. 2001). However, that rule is not applicable here because the information Kelly provides in her affidavit is more specific and does not contradict the concessions made in her deposition.   Moreover, even if the court were to disregard her affidavit, Kelly's medical records provide evidence of the increasing seriousness of her back condition, from which an impact on her ability to work and perform other activities could reasonably be inferred.   For example, as indicated earlier, the report of a doctor at the Spine Center of Newton-Wellesley Hospital on June 2, 2005 — the day after Kelly was

14

terminated – states that "[p]ain is interfering with all her daily activities." Kelly Aff., Exh. E. As also describe earlier, an MRI done in February, 2005 showed "several bulging discs with nerve room impingement," which could reasonably explain Kelly's reported pain and any related limitations on her life activities. Kelly Aff., Exh. D.

The evidence Kelly presents is sufficient to permit a reasonable fact finder to conclude that she was substantially limited in the performance of major life activities. Viewed in the light most favorable to Kelly, the evidence indicates  that her back problems were getting worse and were not temporary. She also presented evidence about the impact of her back condition on her work and on other areas of her life that could contribute to a conclusion that she was handicapped. See School Comm. of Norton v. Mass. Comm'n Against Discrimination, 63 Mass. App. Ct. 839, 845 (2005) (concluding individual with chronic back problems resulting in physician-imposed lifting restriction of twenty-five pounds was properly found to be handicapped); Mazeikus v. Northwest Airlines, Inc., 22 MDLR 63, 2000 Mass. Comm. Discrim. LEXIS 58, *28 (2000) (finding complainant handicapped where she could not lift more than 20 pounds, could not sit or stand in one position for a long period, and required ongoing medication for pain); see also Flanagan-Uusitalo v. D.T. Indus., Inc., 190 F. Supp. 2d 105, 115 (D. Mass. 2001) (finding plaintiff produced evidence that her heart

condition "limited her major life activities by causing her anxiety, depression and chronic physical pain").[2]

"[R]esolution of whether a person's impairment substantially limits that person's performance of a major life activity requires an individual, case-by-case assessment.  There are no bright line rules with respect to precisely how limited a plaintiff's performance of a particular major life activity must be before it qualifies as 'substantial.'"  Shedlock v. Dep't of Corr., 442 Mass.

---

[2] The cases cited by the Magistrate involve conditions not assumed to be long-term, or a failure to present evidence about the impact of a condition on a plaintiff's activities.  See Prescott v. Higgins, 538 F.3d 32, 44-45 (1st Cir. 2008) (finding limitation to ability to work not substantial because disability not alleged to be permanent or long-term); Wright v. CompUSA, 352 F.3d 472, 476 (1st Cir. 2003) (upholding summary judgment after finding plaintiff could not show that his ADD substantially limited his ability to work, where he acknowledged that treatment had been successful, and where problems only began when a change in management caused him stress that affected his ADD symptoms); Benoit v. Technical Mfg. Corp., 331 F.3d 166, 176 (1st Cir. 2003) (plaintiff's physical impairment did not rise to the level of a handicap where he only showed that he could not do heavy lifting and where he did not indicate that the impairment was permanent or long-term); Preble v. Transp. Displays, Inc., No. 04-11005, 2005 WL 2065327, *2 (D. Mass. 2005) (granting summary judgment where plaintiff stated that he had to watch what he ate and monitor his blood sugar, but did not assert that his diabetes and heart condition impaired any life activity); Marlon v. W. New England Coll., No. 01-12199, 2003 WL 22914304, *7-*8 (D. Mass. 2003) (finding plaintiff did not show she was substantially impaired in her ability to work, where she made no showing that she was unable to perform particular classes of jobs, and worked successfully as a paralegal; she did not demonstrate she was substantially impaired in her ability to learn, where she only claimed she was unable to perform successfully on long exams); Grindley v. Royal Indemnity Co., No. 94-12511, 1996 WL 780557, *5 (D. Mass. 1996) (finding period of recovery from surgery was temporary and had "little long term impact on . . . job performance").

844, 852 (2004) (finding jury could credit plaintiff's account of
the extent and effect of his pain). Through her own affirmations
and available medical records, Kelly has submitted evidence which
if believed is sufficient to permit a reasonable fact finder to
conclude that she was "handicapped" within the meaning of ch. 151B.

> 3. Genuine Issues of Material Fact Exist as to Whether
> Kelly is a "Qualified Handicapped Person" Under Chapter
> 151B

Kelly is a "qualified handicapped person" if despite her
handicap she is able to perform the "essential functions" of her
job, or would be able to perform them with reasonable
accommodation. Mass. Gen. Laws ch. 151B, §1(16). This prong of
the statute protects employers from having to retain or hire
handicapped individuals who are not able to accomplish the
"principal objectives of the job." See MCAD Guidelines at II.B.[3]

---

[3] Federal guidelines can also provide assistance to a court
interpreting the "essential functions" requirement of ch. 151B.
Labonte v. Hitchins & Wheeler, 424 Mass. 813, 823 n. 13 (1997).
29 C.F.R. §1630.2(n)(2) provides that "(i) The function may be
essential because the reason the position exists is to perform
that function; (ii) The function may be essential because of the
limited number of employees available among whom the performance
of that job function can be distributed; and/or (iii) The
function may be highly specialized so that the incumbent in the
position is hired for his or her expertise or ability to perform
the particular function." Evidence that a particular job
function is essential can include "(i) The employer's judgment as
to which functions are essential; (ii) Written job descriptions
prepared before advertising or interviewing applicants for the
job; (iii) The amount of time spent on the job performing the
function; (iv) The consequences of not requiring the incumbent to
perform the function; (v) The terms of a collective bargaining
agreement; (vi) The work experience of past incumbents in the
job; and/or (vii) The current work experience of incumbents in

17

"[A] regular and reliable schedule may be an essential element of most jobs. However . . . resolution of the issue in each case requires a fact-intensive inquiry into the pattern of the attendance problem and the characteristics of the job in question." Ward v. Mass. Health Research Inst., Inc., 209 F.3d 29, 35 (1st Cir. 2000) (internal citations omitted) (reversing grant of summary judgment in case of arthritic man who was terminated for excessive tardiness after being denied an accommodation to begin and end work later in the day); see also Humphrey v. Mem'l Hosp. Ass'n, 239 F.3d 1128, 1135 n.11 (9th Cir. 2001) ("[A]lthough excessive or unscheduled absences may prevent an employee from performing the essential functions of his job . . . regular and predictable attendance is not per se an essential function of all jobs.").[4]

However, a handicapped individual who "engages in egregious misconduct, sufficiently inimical to the interests of his employer that it would result in the termination of a nonhandicapped employee is not a qualified handicapped person." Mammone v. President & Fellows of Harvard Coll., 446 Mass. 657, 679 (2006) (affirming summary judgment where bipolar individual openly

_____

similar jobs." §1630.2(n)(3).

[4] Cases dealing with analogous federal anti-discrimination provisions are "helpful" in interpreting ch. 151B. Dartt v. Browning-Ferris Indus., Inc., 427 Mass. 1, 9-10 (1998) (noting that Jacques v. Clean-Up Group, Inc., 96 F.3d 506 (1st Cir.1996) is "particularly instructive"); see also Wheelock Coll. v. Mass. Comm'n Against Discrimination, 371 Mass. 130, 136 (1976).

disobeyed supervisor's orders, engaged in public disturbances, and used abusive language when confronted by his supervisor and another administrator); see also Garrity v. United Airlines, 421 Mass. 55 (1995) (affirming summary judgment where alcoholic employee became inebriated and behaved inappropriately while flying on employee pass).[5]

The Magistrate Judge found that the "undisputed facts show that Ms. Kelly was unable to perform functions she admitted to be essential to her job . . . , those of having good attendance, reporting to work on time and adhering to a work schedule, and keeping co-workers and managers apprised of her work schedule." Report at 24-25. Indeed, Kelly conceded in her deposition that it was "essential" to her job to have regular attendance, be punctual, and keep managers apprised of her work schedule, and CORT emphasized the importance of these responsibilities in its handbook and its warnings to Kelly.

However, Kelly disputes CORT's characterization of her record of timeliness, and asserts that her attention to her job responsibilities was never compromised by any absences that she did have. It is undisputed that Kelly went to the emergency room and received treatment for her back on May 31, 2005, and that she

---

[5] The MCAD Guidelines state that "[w]here misconduct is related to a handicap or disability, there may be a duty to provide reasonable accommodation. Such accommodation may include, for example, a leave of absence or participation in a company employee assistance program." MCAD Guidelines at X.D.

provided documentation of this visit to CORT upon her return. Kelly also provides evidence that she was performing the essential functions of her job, including positive evaluations, a complimentary letter from a CORT client, and CORT's decision to retain her when it laid off the rest of her department.

While in <u>Garrity</u>, the court found the plaintiff not to be a "qualified handicapped person" based on a single instance of misconduct, disputed issues of material fact preclude a similar conclusion here.   Kelly reports that on May 31, 2005 she was at the emergency room and unable to call her supervisor.   Therefore, the parties disagree as to whether Kelly engaged in any misconduct at all.   Further, while the behavior in <u>Garrity</u> was of a public nature and could be assumed to be inimical to the employer's interests, there is a dispute in this case as to whether CORT suffered any prejudice as a result of Kelly's absences.   Kelly has submitted evidence that could support a conclusion that she performed her job well, and that she did not have a significant problem with absenteeism. A trier of fact could, therefore, find that Kelly was able to perform the "essential functions" of her job as required by ch. 151B.   <u>See</u> <u>Mammone</u>, 446 Mass. at 680 ("it is appropriate for a jury to decide the nature and extent of an employee's misconduct"); <u>Cargill v. Harvard University</u>, 60 Mass. App. Ct. 585, 597 (2004) (reversing grant of summary judgment for Harvard University, finding that genuine issues of disputed

material fact existed for trial as to whether paging, retrieval and shelving were essential functions of reference librarian's job).

> 4. Genuine Issues of Material Fact Exist as to Whether Kelly was Terminated Because of Her Handicap

An employer may not "dismiss from employment . . . because of his handicap, any person alleging to be a qualified handicapped person."   Mass. Gen. Laws ch. 151B, §4(16).   To prevail in her action, Kelly must demonstrate that her handicap was in whole or in part the cause of her discharge.   Dartt, 427 Mass. at 7-11; see also MCAD Guidelines at IX.A.2 ("Complainant . . . may recover where a combination of lawful and unlawful reasons motivated the discharge.").

A termination that results from conduct that is itself the result of a disability is not the same as a termination because of the disability.   See E.E.O.C. v. Amego, Inc., 110 F.3d 135, 149 (1st Cir. 1997) (stating that "[t]o the extent that the EEOC is arguing that conduct connected to a disability always must be considered to be action 'because of' a disability, that is too broad a formulation," but finding that the question of a "disability and conduct connection" was not raised in the case). But see Gambini v. Total Renal Care, Inc., 486 F.3d 1087, 1093 (9th Cir. 2007) (finding plaintiff entitled to instruction to jury that, "Conduct resulting from a disability is part of the disability and not a separate basis for termination.").   Under the analysis of Mammone and Garrity, see part III.C, supra, the inquiry into

21

whether an employee who has committed misconduct relating to a disability is a "qualified handicapped person" may be closely linked to the inquiry about whether the handicap or the conduct caused a termination. If Kelly is "qualified" because she did not engage in misconduct that would lead to the termination of a nonhandicapped employee, CORT's stated reasons for terminating her may be found to be pretextual. However, a discharge based on a sincere but mistaken belief by CORT management that Kelly had engaged in misconduct would not establish a violation of ch. 151B. See Morgan v. Mass. Gen. Hosp., 901 F.2d 186, 191 (1st Cir. 1990) (finding evidence that hospital was wrong in determination that plaintiff had been first aggressor in altercation with co-worker, was not sufficient to create a dispute concerning a material fact as to existence of pretext for discrimination in Title VII case).

Where the claimed misconduct is related to a disability, the fact finder must still weigh the evidence to determine whether the disability, rather than the conduct, motivated the termination in whole or in part. See Troy v. Bay State Computer Group, 141 F.3d 378, 381-82 (1st Cir. 1998) (stating that key inquiry was whether employer had discharged employee with pregnancy-related absences "under standards applied to other employees, even if the poor record were due to pregnancy complications," or whether poor attendance was a pretext and pregnancy was actual reason for the discharge); Evans v. Federal Express Corp., 133 F.3d 137, 140 (1st

Cir. 1998) (finding if alcoholic employee had made timely request for reasonable accommodation that would have prevented the conduct leading to his termination, the termination might still be regarded as having been "because" of a handicap; a contrary rule would allow employers to deny a reasonable accommodation and then terminate a worker for poor performance).

The parties agree that Kelly was terminated, at least to a large degree, as a result of her long absence from work on May 31, 2005. Kelly does not provide evidence that her back condition was discussed in making the decision to terminate her. Rather, she argues that the fact of her termination after a visit to the emergency room, where CORT had evidence that she had received treatment for her back condition, itself raises an inference of discrimination and helps to refute CORT's claim that she was terminated because of poor attendance.[6] Although evidence of a mistake by CORT as to whether Kelly had engaged in misconduct would not itself be grounds for a denial of summary judgment, see Morgan, 901 F.2d at 191, numerous contested issues of fact bear on the question of whether CORT's stated reasons for terminating Kelly are pretextual. For example, the parties disagree as to whether Kelly

---

[6] CORT argued and the Magistrate Judge found that Kelly has failed to assert or provide evidence that CORT's stated reasons for terminating her are pretextual. While Kelly does not use the term "pretext," she implies that CORT's reasons were pretextual by questioning CORT's characterization of her record of attendance and providing evidence that CORT knew she had gone to the emergency room on May 31, 2005.

provided CORT with a story about her absence on May 31, 2005 that it found credible, and whether Kelly's attendance record and its consequences have been properly characterized by CORT. A jury could reasonably find that CORT was not responding to Kelly's period of absence from work "under standards applied to other employees," Troy, 141 F.3d at 381, and that the stated reason was a pretext for discrimination against a handicapped person who was having increasing difficulty in doing her work without additional, reasonable accommodations. Questions of material fact, therefore, exist as to whether Kelly was terminated in part because of her handicap. See id. (finding, in case of woman fired after pregnancy-related absences from work, that jury could conclude her employer acted on "little more than a stereotypical judgment that pregnant women are poor attendees").

In view of the foregoing, CORT is not entitled to summary judgment on Kelly's claim of handicap discrimination.

B. Counts II and III

The Magistrate Judge found that plaintiff's claims for damages relating to intentional and negligent infliction of emotional distress are preempted by the Massachusetts Workers' Compensation Act, Mass. Gen. L. ch. 152, §1 et seq. Plaintiff does not address Counts II and III in either her opposition to the motion for summary judgment, or her objection to the Report.

Mass. Gen. Laws ch. 152, §24, the exclusivity provision of the Workers' Compensation Act, requires employees to reserve in writing and at time of hire the right to pursue common law claims with regard to injuries that are cognizable under the Act, and otherwise deems these rights to have been waived. See Green v. Wyman-Gordon Co., 422 Mass. 551, 558-59 (1996) (finding workers' compensation act barred plaintiff's claims for negligent and intentional infliction of emotional distress where the claimed injury arose in the course of employment). As there is no evidence that Kelly reserved her right to assert common law claims, and the injury she is alleging arose within the course of her employment, summary judgment is appropriate as to Counts II and III.

V. CONCLUSION

In view of the foregoing, it is hereby ORDERED that the defendant's motion for summary judgement (Docket No. 29) is DENIED as to Count I and ALLOWED as to Counts II and III.

UNITED STATES DISTRICT JUDGE